TERRITORY OF HAWAII *v.*
OPRISINO BERSABAL ALFARO.

NO. 2972.

ARGUED OCTOBER 20, 1954.           DECIDED OCTOBER 26, 1954.

TOWSE, C. J., STAINBACK, J., AND CIRCUIT JUDGE
FAIRBANKS IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY STAINBACK, J.

The defendant is charged with a violation of section 1223, Revised Laws of Hawaii 1945, as amended by Act 211, Session Laws of Hawaii 1949, which reads as follows:

"Sec. 1223. Nets and traps, minimum sizes. It shall be unlawful for any person to use fish nets or traps of any type with a stretched mesh of less than two inches, *or to use any trap which is not portable or which is more than ten feet in length or six feet in height or width;* provided, however, that (1) persons holding a sport fishing license may use throw nets with a stretched mesh of not less than one and one-half inches, (2) pond owners or operators who hold a license issued under section 1236 may use nets of smaller mesh to take young mullet or pua for stocking their fish ponds, (3) commercial fishermen who hold a permit issued under section 1237 may use nets of smaller mesh to take nehu and iao for bait, and (4) all persons

may use nets of smaller mesh to take shrimp or opae or opelu; and provided, further, that in the taking of akule a net with mesh of not less than one and one-half inches may be used." (Emphasis added.)

The trap used is described as "A net drawn into a circular shape constructed of cord mesh approximately 300 feet in circumference, and about 5 feet in height, with an opening or mouth measuring approximately 36 inches in width; from one side of said mouth, being extended in an outward direction, an arm approximately 300 feet long constructed of cord mesh net; from the other side of said mouth, likewise extending in an outward direction, an arm approximately 400 feet long constructed of cord mesh net; each of said arms so constructed, being approximately 5 feet in height; each of said arms, at the point of attachment to be the circular net hereinabove described, being extended into the interior of said circular net for a short distance and thereafter curling in opposite directions, the outward extremities of each arm farthest from the circular net curling towards each other; from the center of the mouth of said circular net extending in an outward direction being a third arm likewise constructed of cord mesh net approximately 1000 feet in length and approximately 5 feet in height, with its outward extremity, that is to say, the point farthest from the mouth of the circular net, curled or curved, the first and second arms of cord net describing a funnel leading to the interior of the circular net through said mouth or opening; said three arms being attached to and affixed to the circular net at its mouth by three steel pins or rods, one being affixed to each of the three arms hereinabove described, said steel pins or rods being approximately 5 feet in length, and each of such steel pins or rods being driven into the ocean bed for a depth of approximately 12 inches;

"That the entire contrivance hereinabove described

being so constructed that fish entering within the circular shaped net through the arms describing a funnel would be trapped within the circular net * * * ."

A demurrer was filed on the grounds that (1) the contrivance was a "fish net" and not a "fish trap"; (2) the contrivance or device described in the complaint was a "portable" fish trap and therefore not prohibited by the statute; and (3) the statute fails to define what is meant or intended by the term "non portable fish trap" and is vague, indefinite and uncertain and therefore unconstitutional.

The demurrer was sustained and the case comes to this court upon writ of error by the Territory.

The defendant contends that there is no restriction on the use of fish nets other than as to the size of the mesh; that fish nets may be used in any form, shape, manner or length and that there is no restriction as to how long they may remain in the sea.

Fish traps may be made of various materials, wire, wood, net or any other material. It is no less a trap if so constructed as to lure fish into the enclosed space from which it is difficult for them to escape. Webster's New International Dictionary, Second Edition, Unabridged, gives the definition as follows: "Trap. *Fishing*. A net, or a part of a net, so constructed as to lure fish into an enclosed space from which it is difficult for them to escape; a trap net."

The nets as arranged constituted a trap. Fish swimming parallel to the shore upon striking the center net on either side would naturally turn toward the ocean (at least that is its design and purpose), get within the funnels formed by the two other nets and the center net, and thus pass into the 300-foot enclosure from which it would be difficult to escape because of the circular arrangement of the funnelling nets inside the small opening. The idea of

the trap is that it would be left for a considerable time in the ocean and by this funnelling construction the fish are lured into the enclosed space from which it is difficult for them to escape. The trap as described is a typical trap arrangement.

The provision that the trap must be portable is a limitation upon the size of the trap. If there is any question as to the maximum size of a portable trap the doubt would be removed by the provision in the statute which forbids the use of "any trap which is not portable or which is more than ten feet in length or six feet in height or width." The trap exceeded this limitation and as described is a clear violation of the statute.

Reversed and remanded for further proceedings in conformity with this opinion.

*T. S. Ogata,* Deputy County Attorney (*H. L. Duponte,* County Attorney, with him on the briefs) for plaintiff-in-error.

*W. F. Crockett* (also on the brief) for defendant-in-error.